and 19-3226 and 19-3227 Rahala v. Spencer Fane et al. are on the call. We are ready to hear you, Counsel. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, this is Carolyn Farrellis of Wheeler-Trig O'Donnell in Denver, Colorado. I'm counsel for Hush Blackwell. I am arguing, however, on behalf of both appellants, Hush Blackwell, LLP, and Spencer Fane, LLP, and this consolidated appeal. Co-counsel on the line, Mr. Cruciani and Mr. Johnson, may argue one or more issues during the reply argument, depending on what the issues are that are raised before then. Your Honors, where a transfer, here the transfer of an interest to develop a wind farm has been avoided, Section 550A may permit a trustee to obtain recovery, but the statute's plain language puts two limits on that recovery that are pertinent here. First, the who. It limits the universe of people against whom recovery may be had, and it doesn't include anyone, including the defendant law firms, who never received the wind farm interest. The trustee hasn't squarely addressed this language in his briefing, and the language forecloses his claims. The inquiry can and should end there. The court need not reach the second limitation in the text of the statute, which is the what. What may be recovered is either the wind farm interest itself or its value, which only serves to underscore that recovery is premised in the first instance on someone actually having received the wind farm interest. The text of Section 550 resolves both of those aspects of this appeal. Applying the plain language of the statute does not lead to any absurd or inequitable results. On the contrary, it is the trustee's argument that the word proceed should be judicially written into the statute that would invite abuse and even impede access to justice for defendants in avoidance actions. Ms. Farrell, this is Jed Stone.  Yes, Your Honor. I just want to clarify, what is the nature of the wind farm interest? I mean, in the trustee's brief, there was reference to a developer fee and sunk cost reimbursement. What is the nature of the interest that was avoided ultimately in May? It is unclear what the nature of the interest is other than it is crystal clear the interest was not cash. The trustee conceded in his brief on page 12 that the transfer that was avoided was not a transfer of cash, which is all that the law firms received. Correct me if I'm wrong, but this is Judge McHugh. The interest that was transferred was a right to cash, correct? The interest that was transferred was at times in the complaint referred to as a right to a development fee. It was other times referred to as some sort of ownership interest in the lookout project itself, which appears to be a wind farm. So it is inconsistently defined in the complaint. In the order we take it... Counsel, Judge Lucero, the closer you get to an interest in some aspect of the wind farm and the farther away you get from cash, it seems to me cuts against your interest. That is to say that you come closer to a transfer of an interest when you get some kind of... What word am I searching here? Inchoate interest in the property, don't you? The answer to that, Your Honor, is no, you don't. It's based on the plain language of the statute, and here's the reason why. Congress decided to draw a line in Section 550A, and the line defined in the answer to the first question, who can be a proper defendant under that section of the code? And the statute, based on its language, is very clear that you have to look at recipients, transferees of such transfer, the transfer, of course, being the transfer that was avoided, a transfer of property, whatever that interest in property is. Let me... This is Judge McHugh. Let me interrupt. Let's say the interest was accounts receivable. If those accounts receivable end up being paid by third parties and are then converted into cash, and that cash is transferred to someone, you're saying they're not a transferee of the property? That is correct. If the property... Counsel, Judge Lucero, this really brings us back to introduction to Law 101A on property. I mean, property is not things, but rights in things, as you'll recall, isn't an interest in the proceeds of an ongoing operation of right to things rather than a physical object? I think the answer to that is that it's not property, if I'm understanding correctly your question, Your Honor.  Well, what I'm saying is that property is not necessarily the thing. The property can be the right to things. That's what we're talking about here. That is correct. But the question for purposes of 550A is, what was the property transfer that was avoided? And what was the property at issue in that transfer? And 550A puts a spotlight on that property. And Ms. Farrell, as I understand your position, it actually helps you that it is not cash. I mean, irrespective of what it is, if it is not cash, then the premise would be, we never received the property. That is correct, Your Honor. Okay. And Congress drew a line there between the property for whom the transfer was avoided and any sort of proceeds of that property. And so if you look, for example, at other lines that Congress has drawn, for example, statutes of limitations that Congress or state legislatures may draw, there has to be a line drawn somewhere. And somebody could file a lawsuit a day after another plaintiff, and one of them will find themselves barred and one of them will not. The line Congress has chosen to draw here is to focus the spotlight of Section 550A on the property that was the subject of the avoided transfer, which here is indisputably different than the property cash that was ultimately received by the law firms. They're just different property. One is proceeded- What did the law firms receive, Judge Lucero? What did the law firms receive? The law firms received cash that was, I'll give you a little bit of a history of where the cash came from. Edison had paid money to satisfy a judgment that was entered against it by a federal court in Pennsylvania. That judgment was paid into the registry of the bankruptcy court in Kansas, and ultimately that was released by order of court over objection of the trustee to LWHC and to Freestream, which then used some of those funds to pay the law firm. So there's- the cash ultimately came from Edison through the bankruptcy court registry to the law firms. The property- Yes. No, go ahead. I'm sorry. The property that's alleged to have been transferred, which indisputably is not cash, was an interest in the Lookout Project, however defined. The law firms never had the ability to go to, for example, Edison, and demand payment for the law firm project. That interest was never one that was transferred to the law firms. That interest was- This is Judge McKee. That interest was transferred to LWHC, correct? That is correct. And from that point to Edison. And Edison actually was, at some point, a defendant in a claim brought by the trustee, and the trustee ultimately dismissed the claim against Edison. Okay, so Edison got the interest, and ultimately, as a result of the judgment, they had to provide essentially the value of the interest back into the Registry of Kansas? That's not entirely correct. What they had to provide was there was a certain payment that was going to be made towards the end, and there was a dispute over the amount of the payment. Edison alleged that due to construction delays and other cost overruns in the project, that the final payment should be less than LWHC and Freestream alleged it should be. That was the subject of the claim that was brought in Pennsylvania, and ultimately, the district court awarded a judgment in favor of LWHC and Freestream, and including interest that amounted to approximately $9 million. That was the amount that was then deposited into the bankruptcy court registry. As I mentioned, Section... Yes, Your Honor. And as a consequence, was there anything, as a result of the trustee being successful in the avoidance action, was there anything in possession of Edison at that juncture? I mean, did Edison have anything? Edison did have the ability to return the value of the property if, in fact, the trustee thought that it should bring a 550A claim. So Edison, at that point, had the undefined interest in the property, perhaps, but Edison, as a transferee of the property, certainly could have been the defendant in avoidance in a 550 action, the claim being that even if you no longer have the property, however it's defined, you can return to me, the trustee, the value. But the Section 550A does not allow the trustee to then pursue different entities and individuals from whom Edison had paid money, proceeds of that property transfer. Your Honors, I would like to reserve some remaining time for rebuttal. I have about four minutes left, but I would also like to answer any additional questions that you may have for me at this time. I just have a quick factual question. The payments to the law firms, all of those payments occurred prior to May 2017 when the avoidance action was successful, right? I believe that to be the case, but I don't have the record citation for the dates in Okay. Okay. Thank you. So, unless there are any other questions, we would ask that the rest of your time is reserved for rebuttal counsel. We can hear from you, I believe. Thank you, Your Honor. May it please the Court, Your Honors. This is Mike Healy, or Michael Healy, counsel for Trustee Eric Rila. Let me pick up where you left off by answering several of the questions posed by the Court. The first one is, were the payments to the law firms made before the avoidance was entered through the judgment of avoidance, and the answer to that question is yes. The second question that the Court was discussing is, what was the interest that was transferred from Generation Resources to Lookout Wind Power Holding Company? That was an interest in being paid the sale proceeds of the Lookout project. That very issue of what was the interest was the subject of an appeal to this Court where the District Court had granted summary judgment to the insider defendants who were the officers and directors of Generation Resources on that issue, and the Tenth Circuit came back and held that the interest that was transferred was sufficient to support a fraudulent transfer claim. Essentially, the way to look at it is a sale contract, and really that's what it was. It was a development agreement that contained the requirement of sale and payment for that sale pursuant to a specific formula. So, it was, Mr. Healy, so it was in effect a right to receive money in connection with the Lookout project. That's exactly what it was. And was that right, that that right was subsequently transferred to Edison, right? No. The right to be paid was transferred to Lookout Wind Power Holding Company, which was also controlled by the Generation Resources insiders. Lookout Wind Power held that right until the sale closed. The sale happened to close while that right was, after it had been transferred from Generation Resources to Lookout Wind Power, Lookout Wind Power held that right, the sale closed, and then it exercised the right, which was to get paid by Edison. Edison made the payment. They were the buyer of the wind farm. Oh, okay. Okay. So, Edison bought the farm, and then Lookout, LWHC, had the right then to seek some of the money from that. Exactly. There was a dispute over the amount to be paid, because the amount to be paid was pursuant to this complex formula, and there was an argument about, you know, what number that formula resulted in, and that was the subject matter of the dispute between Lookout Wind Power Holding Company and Edison in Pennsylvania. That's where the Pennsylvania judge ruled that Lookout, he decided that the amount was $9 million and change, and that it ought to be deposited into the Kansas Bankruptcy Court so it could be protected until the trustee's fraudulent transfer claim was resolved. But the district court, the defendants had the claim removed, or had that issue removed from the Bankruptcy Court to the district court, who then decided to disperse the money, which has vanished all except for the amounts held by the law firms. Okay, that tells us, Mr. Dilley, but who held, who had possession, essentially, of the Lookout project at the time that Edison bought it? Lookout Wind Power Holding Company. Okay, got it. And so the payment from Edison, the payment from Edison went to the LWHC. Well, that is exactly correct. I mean, the judgment... And it went to them because it went to that entity, because that entity held the right that was transferred to that entity from Generation Resources. Correct. Okay. Edison is just a third-party buyer, essentially. Right, right. They bought the wind farm, they had a sale contract, once again, they got the wind farm, they paid the money, Lookout Wind Power Holding Company was the seller who received the cash. Okay, and then Lookout Wind Power Holding Company made some payments to the firms. Exactly. They took the... They never transferred any right to further payments with respect to the Lookout project. Correct. Okay. So once Lookout was paid, they had the cash, the deal was done and closed. Lookout then used the proceeds that it received to pay the law firms. Okay. I understand your argument, but I also understood... This is Jim Cicero. I understood the appellant to argue that in addition to cash, the lawyers, the law firms received some other rights other than cash. Is that incorrect? That is incorrect. They just received the cash. All right. Thank you very much. Certainly. I hope that answers kind of the background questions, you know, about what was transferred to kind of shift gears a little bit into the issue before this court, which is whether Section 550 permits the trustee to recover the proceeds of sales. The argument that I think is most important to make is really an undisputed argument, and that is that the... Obviously, the trustee is not in possession of the sale proceeds today, but this is only true because the sale closed in Edison P before the trustee came along. In other words, it's the timing of the sale that is controlling this. The defendant's argument is that, look, they never held a right in the actual... The right to payment. In other words, they didn't receive an assignment of part of the sale contract. What they received was the actual cash from the sale. Had that sale occurred later, theoretically, their whole argument would be destroyed because then they would have received the same thing that Lookout Wind Power Holding Company received, which was a right to payment. This means their argument turns on whether or not, or when rather, the sale closed. That's something that the statute simply cannot allow and does not allow because unscrupulous debtors could easily control the timing of a sale. Quite frankly, under the defendant's argument, all a debtor would have to do is to take the property that would be subject to a fraudulent transfer claim, sell it, and then give the cash from that sale to somebody else. It doesn't matter whether it was for good faith or bad faith or for what value was given. The Bankruptcy Court specifically noted that in its ruling, that that argument, the timing argument, makes no sense because it completely undercuts the purpose of the Bankruptcy Code. This court is telling the Rodriguez decision that the purpose of the Bankruptcy Code is to restore the estate or restore the debtor to the financial condition it wouldn't have if the transfer had not occurred. The defendant's argument squarely cuts against that. That is really the key, which I think answers this whole issue about whether or not the trustee has the right to pursue the proceeds of a sale. Mr. Healy, this is Judge Holmes. Your notion that the law firms would have been in the same position as WHC, at no point would the law firms have had an interest in being paid based upon the transaction related to the lookout farm, right? I mean, they had a right to be paid for their services rendered, but not for the transaction itself. You are correct. And that is, they all… And what's the difference? Here's the argument, and this is a complicated case, but obviously if the Tenth Circuit were to issue this interpretation of Section 550, it would apply to other cases that are more simple. But, for example, in this case, lookout wind power could have, the law firms could have gone to lookout wind power and said, hey, look, if we made a deal where we'd have some kind of contingency arrangement on this, but we're getting uncomfortable with it, and so we'd like a partial assignment of your right to be paid. Now, that did not happen, but it could have happened. And had that happened, then that would have undercut the argument that they are making now. And the point to that argument is not the intricacies of how that could happen, but rather that parties, debtors and transferees, can manipulate the direction of the cash or the right to be paid and avoid the trustee and avoid the purpose of the bankruptcy code if the court were to adopt the defendant's argument. Mr. Healy, this is Judge Holmes again, but isn't that really a function of the limitation of the statute focusing on property? That's exactly right. If the law firm had negotiated for a portion or an interest in the lookout property to get paid, in other words, they wanted to do that as a substitute for their contingency arrangement, then they would have been a transferee of the property. But by function of the statute itself, they weren't. I think that's the argument that's being made, which is why they don't owe you anything. Well, that's certainly the argument that I think the defendants are making, but I think it's incorrect. And in fact, all the case law that is cited in our brief have held that it's incorrect as well, because Section 550 allows the trustee to not only recover the property, but also the value of the property. And that's exactly what the situation is here. Is there a distinction between value of the property, though, and proceeds after the fact? I mean, there's no correlation between the value of the property and what you're trying to get from the law firms, is it? You're trying to get a fixed sum certain, not the value of the property. Well, we're trying to get the value of the property from the law firms. Obviously, the entire $9 million didn't all go to the law firms. Only some of it did. So we can't get the entire value of the property from the law firms. You can only get what they receive. However, that's exactly what the scenario is, and that's exactly what the bankruptcy judge has held. And that's what these other cases hold, too, is that in some circumstances, you simply cannot return the property. The raise is either vanished or it is simply not practicable to do that. Of course, complex real estate transactions are one of them. But in this case, the value is exactly what is being pursued. And the reason that that fits, and the reason that the plethora of cases that we've cited in our brief find that way is because of what I began my argument with, which is that the function of Section 550 is to allow the trustee to collect funds and restore the estate to the position it would have been in, but for the fraudulent transfer. Mr. Healy, this is Judge Holmes, and I looked at your cases. I don't see a case that's like this. And give me your case that is the closest factual analog to this. Because in those cases, we were talking, number one, the specific issue in question is the transferee. I mean, it's one thing to say I'm getting the value of the property from the person who's the transferee, but I don't see a factual analog. Give me the closest case you have to what we have here. Well, the case that I would direct the court's attention to is the Rodriguez case, and not necessarily for the decision that the Tenth Circuit reached in that, but because it cited a number of cases within that that are more on all fours to the situation in this case. And, I mean, one of the cases that I think is very interesting that Rodriguez cited was the Willard case. And the fundamental conclusion of that decision is that you cannot separate the sale contract from the sale proceeds. They're one transaction. They're not two things to be divided or split up. Section 550 is not intending to separate the rights that are provided under a sale contract from the sale proceeds that are paid pursuant to that contract. It's one transaction. It's not two separate ones. And it would be an absurd result to have the statute read that way. It's simply not the case. And it would turn the or value analysis or value language in the statute into meaning the surplusage. And so I thought that was one of the more, I thought that was a good case to look at. Of course, none of these cases are exactly on all fours with this complex wind farm transaction in this case. But the principles that undergird them are. And is Henry Rutherford one of those cases? No. Rutherford is a rogue outlier by a Massachusetts bankruptcy judge who entered a summary judgment that was never affirmed by the district court. It was interlocutory, therefore, and has never been signed. This is the sole authority upon which the defendants hinge their entire argument. And it's simply wrong. There's really no other way to say it. It doesn't contain an analysis like that that we are discussing here. Your honors, I hear that that is my time that is up. I would urge that the court affirm the bankruptcy judge unless the court has any questions. That's it. Thank you very much. Your time is expired. Thank you, counsel. Do you have remaining time for the appellant? Counsel has three minutes, 17 seconds, Judge. Thank you. We hear from you, counsel. Ms. Fairless, go ahead. Thank you, your honor. First of all, the trustee, both in his brief and in his argument just now, never hits head-on the who question as articulated by Congress in the statute is answered with reference to only the property. And to be clear, if I misspoke, Judge Loeser, I believe based on one of your questions, I apologize for that. The law firms only ever receive cash, and that is all that we've ever maintained the law firms received. And the trustee acknowledges that the law firms never had the right to go to Edison and demand payment as LWHC would have had. Of the cases that he cited, none of them hit head-on the question of whether Section 558 by its plain language can apply to somebody, the who, who only received proceeds and not the property itself. And in most of the cases, it never was. As for the what, the what being the cash that you did receive, was that not immediately traceable to the sale? The trustee certainly alleges in the complaint for purposes of Rule 12 that it was. So yes, for purposes of Rule 12, it was traceable. Thank you. The trustee then brings up what I'm going to call the policy argument and tries to argue that this would create inequity in that somebody could simply sell the property and then transfer the proceeds. But what the trustee ignores is that he has a remedy under the code for that scenario. He just doesn't have a remedy under Section 550A. There are mechanisms for trustees to bring fraudulent transfer claims. And the trustee would then have the burden of proof on that. If, in fact, the transfer to the lawyers for payment of their legal fees was itself improper, the trustee could and presumably would have sought to recover from them under UFTA. Under that scenario, he would have had the burden of proof and he would have had to prove either actual or constructive fraudulent intent. Could I stop you there for a quick second? Yes. If the scenario that was talked about in which the law firms had actually obtained an interest in the lookout sale, that would be a different situation than what we have here, right? A right to be paid as a result of that transaction? It would. Because in that case, they would have received the property for which the transfer was avoided. And to the question about receiving the property and then selling it, in that situation, wouldn't a trustee still be able to go against the person who received the fraudulent transfer for the value of the property that they received? Well, yes. If there were a fraudulent transfer, then the trustee would be able to pursue the person who received the transfer for the value of the fraudulent transfer. And the trustee would have had, again, the burden of proof to do that. I'm sorry. Judge McHugh, were you about to ask a question of me? Yeah. I mean, here, if the law firms provided legal services and they were paid for those legal services, very good chance you don't have a fraudulent transfer. So, I mean, it is true that you have a situation where LWHC could just sell property and use the proceeds for whatever it wanted to do, and the trustee has no recourse. That's entirely right, Your Honor. I'm out of time, but if I could answer your question, please. Yes. Judge Lucero, is that okay? Yeah. No, yes. I'm sorry. Excuse me. I just... Please. That's entirely right, Your Honor. And that's exactly what Congress intended by drafting Section 550A the way that they did. If, in fact, there are facts that would allow the trustee to bring a fraudulent transfer action against the firms, then he could pursue them for that. But the bankruptcy code has not been drafted to permit the trustee to sue anybody who received proceeds of transfer property for which the transfer was avoided. That is not how 550A is drafted. And if it were drafted that way, that would be the inequitable result. Imagine a situation, if you will, where defendants who are sued in preferential transfer actions or fraudulent transfer actions are trying to find counsel to represent them. And counsel cannot do so because under Section 550A, if that transfer is ultimately avoided, they may be faced with exactly this scenario here where the trustee then says that they need to repay all of the money that they were paid for legal services, even though there was nothing improper about the transfer that was made to them. And no UFTA claim could be made against them. The inequities here cut in favor of the law firms. The law firms are neither within the who of Section 550A, nor were the payments made to them for legal services within the what of 550A. And for each of those reasons, we ask that you reverse and remand with instructions to dismiss the complaints with prejudice. Thank you. Thank you, counsel. Counsel are excused. The case is submitted.